## GRANGER v. LEWIS BROS.

NEW TRIAL.—If the motion for a new trial intelligently refers the court to prior exceptions, it is the duty of the court to investigate them.

IDEM.—On the hearing of a motion for a new trial on the ground that the verdict was not sustained by sufficient evidence, it must appear either that there was a conflict of evidence and that the verdict was against the weight of evidence, or that the case went to the jury on evidence insufficient to establish a *prima facie* case for the plaintiff.

MARRIED WOMEN.—Where there was evidence tending to show that the defendant was a married woman at the commencement of the suit, but it did not appear nor was there evidence tending to show that she was a married woman at the time of sale to her of certain goods for which she was sued alone, *Held*, that at the common law she being under coverture at the time suit was brought, her husband was a necessary co-defendant, and that the act of December 4, 1869, entitled, "An act for the protection of married women," could not apply, nor its effect be considered.

ERROR to the District Court of Albany County.

The action was brought by Lewis Bros. of San Francisco, to recover from Jane Granger a sum of money claimed to be due for certain cigars sold and delivered to her at her request. The answer was a general denial, and also set up that the plaintiff in error was a married woman. The jury rendered a verdict for the plaintiff below.

*W. W. Corlett and C. N. Porter*, for plaintiff in error.

The first assignment of error complains that the verdict and judgment was not sustained by sufficient evidence. It is true that this court refuses to interfere with a judgment on this ground, unless the same is so strongly opposed to the weight of evidence, as to indicate that the jury must have neglected to properly consider the facts or have overlooked prominent and essential points in the evidence, but in this case, the inference of the appellate court seems peculiarly appropriate.

The *essence* of the action brought is a sale and delivery of personal property, and yet the evidence fails to disclose the slightest hint at such a transaction. The only delivery ever made was not for the purpose of carrying out a contract of sale, but more as a matter of storage. The actions of Agent Leebes were themselves admissions of no prior contract of sale.

As the absence of the testimony indicated relates to the very existence of the contract sued on, the verdict of the jury upon this point is open to attack, not merely as against evidence, but as contrary to law. Lewis Bros. claimed a sale of the goods occurring in August, (see record, pages 8 to 41), and they rely upon no subsequent transaction as showing that fact.

As to the second assignment of error, we submit that the deposition of Samuel Lewis is entirely incompetent and immaterial as being hearsay and not the best evidence.

The third and fourth errors assigned are considered in connection with others; and the fifth, sixth, seventh, eighth and ninth errors depend upon the same question, viz.: the right of the plaintiff in error under the second defense of the answer.

The court should have allowed the question, as to whether or not the plaintiff in error was a married woman, to go to the jury. At common law a married woman cannot be sued at all, and is unable to enter into a contract. The common law is modified by our statute somewhat, and she may in this Territory carry on any trade or business on her sole and separate account, and as to such trade or business she is liable on her contracts and subject to suit in her own name. The answer showing Jane Granger to be a married woman, it must then appear that she is sued on a contract which the statute allows her to make. This becomes a material factor in the plaintiff's case, and the testimony utterly failing to show that she was competent to contract, or such a state of facts as allows her to sue and be sued as a *feme sole*, action could not be sustained, and the ver-

dict and judgment ought to have been accordingly; but certainly whether Mrs. Granger was capable of contracting or of being sued became a material fact in the case, upon which the jury should have been permitted to pass. Testimony of Adams, Record, page 20; Testimony of Granger, Record, page 34; Compiled Laws, Wyoming, page 481; Wells' Separate Prop. of Married Women, Secs. 1–11, 136–138, 322, 621; *Camden* v. *Mullen,* 29 Cal., 566; *Holmes* v. *Holmes,* 40 Conn., 117; *Griffin* v. *Ragan,* 52 Miss., 81; *Cary* v. *Dixon,* 51 Miss., 593; *Keen* v. *Hartman and wife,* 48 Pa. St., 497.

The tenth error assigned is that a certain admission of William Granger was allowed to go to the jury, that constituted no part of the *res gestœ,* and was not admissible even had his agency been proven. See authorities cited to the following point. Considerable testimony relative to acts and conversations of William Granger subsequent to the alleged sale and delivery of the goods, was admitted over the objection of plaintiff in error. They were not admissible, and could not be accepted as evidence to bind the principal. Story on Agency, Secs. 134–137 and 138; Wells' Separate Prop. of Married Women, Sec. 171; *Livesley* v. *Lasalette,* 28 Wis., 41.

*M. C. Brown,* for defendants in error.

Before examining the several errors assigned, it may be well to examine the motion for a new trial, for no question omitted therefrom, or not properly presented therein, will now be examined in this court. See *Gibson* v. *Arnold,* 5th Neb., 186; *Creighton* v. *Newton,* Id., 100; *Simpson* v. *Gregg,* Id., 237; *Singleton* v. *Boyle,* 4th Neb., 413; *N. P. R. R. Co.* v. *McCarthey,* 1st Neb., 444; *Wells, Fargo & Co.* v. *Beston,* 3d Neb., 355; *Hawback* v. *Miller,* 4th Neb., 43.

The first ground is this, to wit: Because the verdict is not sustained by sufficient evidence. As to this proposition, I shall cite no authorities, it having long been the rule

of this court that it will not disturb the verdict of a jury when there is a conflict of evidence.

The second ground: That the court erred in admitting the deposition of Samuel Lewis over the objection of defendant. It will be seen that the error complained of is not that the court overruled defendant's motion to suppress the deposition. No exception shall be regarded other than for incompetency or irrelevancy, unless made and filed before commencement of trial. See Civil Code, page 79, section 362; title, Exceptions to Depositions. The only objection that can be here considered is irrelevancy and incompetency, even if indeed this objection is presented in motion for new trial so as to preserve it for consideration here. That the deposition of Samuel Lewis is relevant and competent.

The next ground urged for new trial is that the court admitted testimony over the objection of defendant. This is too general either for bill of exceptions, motion for new trial, or assignment of errors. The court will not examine the record at length to find an objection. It must be specifically set out and stated, or the court is not required to notice it. See *Dodge* v. *The People,* 4th Neb., 231; *Strader* v. *White,* 2d Neb., 360; *Gibson* v. *Arnold,* 5th Neb., 186; *Heard* v. *Dubuque Co. Bank,* 8th Neb., 10; *Lyman* v. *McMillan,* 8 Neb., 134; *McCormick* v. *Keith,* 8 Neb., 142; *B. & M. R. R.* v. *Harris,* 8 Neb., 140; *Torner* v. *Dinsmore,* 8 Neb., 384; *Meek* v. *Keene,* 47 Ind., 77; *Horn et al.* v. *Williams,* 23 Ind., 37; *Morely* v. *Weblett,* 42 Ind., 85.

The next point urged for new trial is that the court erred in taking issue from the jury. This is too general, but is involved in another point presented, and will be examined therewith.

The fifth ground urged for new trial goes to the instructions given by the court, and is also too general, but is also raised in another objection, numbered six, in said motion, and is as follows: That the court erred in refusing requested instructions by defendant. This is too general, but

raises the one question, if any are raised, and only one, presented by the record in this case, viz.:  Should the husband have been joined with the wife as a party defendant in this case?  It is clear that he should not, and that the court in so ruling did not err.  Pomeroy's Remedies, sec. 191 *et seq.*; also secs. 234, 235, 236 and 237; also sec. 318 *et seq.*, particularly 322 and 326; *McKime* v. *McGarvey*, 6th Cal., 497; *Heir* v. *Staples*, 51 N. Y., 136; see sec. 25, page 37, Compiled Laws; see sec. 22, page 36, Compiled Laws; also chap. 82, page 481, Compiled Laws.

I shall not consider any other point attempted to be urged or presented by the record in this case, for the reason no other is perfectly raised or presented, if indeed this is, and the further reason that if they are, they are too trivial to be urged upon the attention of this court.  Upon the whole record it is clear that the judgment is just and should be affirmed.  An appellate court will not reverse a judgment unless the result arrived at appears to be unjust. 5 Neb., 484; *Buck* v. *Waddle*, 1 Ohio, 357; *Bush* v. *Critchfield*, 5 Ohio, 109; *Allen* v. *Parish*, 3 Ohio, 107; *Ludlow* v. *Park*, 4 Ohio, 5; *Jordan* v. *James*, 5 Ohio, 89; *Hinton* v. *McNeil*, 5 Ohio, 109.

PECK, J.  Lewis Bros., sued Jane Granger in the district court for goods sold and delivered; the answer sets up two defenses, one, the general denial; the other, coverture existing at commencement of the suit and nonjoinder of the husband.  The pleadings consist of the petition and answer.  The case was tried by a jury and a verdict rendered for the plaintiffs below.  Sundry exceptions were taken during the trial by the defendant below; and a proper bill of exceptions was filed, and thus became a part of the record.  She reasonably moved for a new trial upon the several grounds, namely: that the verdict was not sustained by sufficient evidence, and was against the law; that the court erred in admitting the deposition of Samuel Lewis, also in admitting evidence against her objection; in taking

from the jury a material issue of the case ; in instructing the jury to disregard evidence adduced to support the second defense; and in refusing to instruct it according to her requests. The motion was duly heard, denied, and a proper exception taken to the denial ; and it, the motion, the denial and the exception thereto are a part of the record. The writ of error having been duly returned, she filed an assignment of errors, re-stating with some difference of particularity those that were alleged in the motion ; the assignment is more specific and amplified, but not more comprehensive and clear than the motion, and is a part of the record.

Both sides assume that a motion for a new trial by the present plaintiff was necessary to preserve her exceptions ; notwithstanding a difference in the court on the subject, we, to dispose of this case, will treat a motion as necessary for that purpose. If necessary, the motion is of the basis of the assignment, and its imperfections cannot be cured by filing an assignment here. The learned counsel for the present defendants object that the motion was too general to point the attention of the district court to the prior exceptions ; that the latter were thus lost, and the assignment is valueless. He has cited several cases from Indiana and Nebraska which seem to countenance that proposition. These decisions, however, belong to a vicious practice that acquired growth in this country ; is opposed to English rule which is our guide; is utterly adverse to the functions of an appellate court, has no sound principle to rest upon, and no palliation but in the pressure of appellate business— a practice of inventing refinements to smother appeals, to close the door of the courts to the suitor, to worry him by embarrassing and senseless niceties, to treat him as if he was to be heard rather as the recipient of favor, than the representative of right; instead of aiming to examine his complaint to see if, peradventure, he has been wronged; and to the end that whatever wrong has been committed may be righted. This court may not deviate from the better

law; it must keep in the old path; it must leave the door of review well open, that in the calm atmosphere of a tribunal of final adjudication, errors which have escaped attention below, may be ascertained and corrected, and the relations of the parties adjusted upon their rights. I can conceive of no institution in the judicial system more important than the court of last resort; its importance increases with the increase of litigation, and it should be easy of access.

The true rule upon the subject of the learned counsel's proposition is, that if the motion intelligently refers the court to the prior exceptions, it is the duty of the court to look back into them. This is the rule at common law upon a motion for a new trial based on the judge's minutes; and the present is such a motion in its nature and principle; the transcript of the official stenographer, filed and thus a part of the record, is still the judge's minutes; and this motion is based upon such a transcript. By this rule it will be found that the motion now before us is sufficiently definitive, clearly referring the court to the prior exceptions; also to the objection, that the verdict was not sustained by sufficient evidence—an objection which might be raised by the motion without prior exception.

The first ground of the motion is, that the verdict was rendered without sufficient evidence, and against the law. To have been rendered without sufficient evidence, there must either have been a conflict, and the verdict against the weight of evidence, and by a rule precise, clear and technical; it was then the duty of the lower court to relieve her of the verdict; or the case must have gone to the jury on evidence insufficient to establish a *prima facie* case for the plaintiff, and then it was the duty of that court to vacate the verdict, though the defendant had omitted to claim before the jury was sent out, a non-suit, and that was its duty, because notwithstanding this neglect of the defendant, the verdict had no basis, and if any ruling of the court on the trial, either in the course of the evidence, or in instructing

or refusing to instruct the jury, error was committed against the defendant below, that error must have served to produce the verdict, and the verdict have been against law; thus each specification of this two-fold ground of the motion, intelligently referred the court to error in the trial, if error existed, entitled the mover to a new trial, and made it the duty of the district court, and makes it our duty, to look back, and see whether there was error; so that this first ground alleged in the motion suffices to secure for the party a thorough examination of the previous case without further complaint; and the additional specifications in the motion were and are superfluous.

But rejecting the first ground, the subsequent grounds are so specified as to unmistakably connect themselves with the prior parts of the case, to which they refer; whether erroneously or not, the district court did admit the deposition of Samuel Lewis and other evidence against the objection of the defendant, and the record unmistakably identifies the evidence and the corresponding exceptions; it did instruct the jury to disregard the evidence adduced in support of the second defense, and withdrew the issue presented by that defense, from the jury; and the second clearly identifies these instructions, and the exception that was taken to them; it did refuse to instruct according to her requests, and the record fully identifies the refusals and the exceptions that were taken to them. This brings us to the merits of the exceptions. We will consider them in their order, as they stand in the record.

The plaintiffs below offered the deposition of one of their firm, Samuel Lewis, which was objected to as " hearsay, incompetent and irrelevant," without specifying a particular part as objectionable, but predicating the objection of the entire deposition. The witness testified only as to a sale as made by this firm, of cigars to the defendant, to the prices, certain credits allowed upon the sale, delivery to and non-payment by her; also to his age, residence, occupation and the composition of his firm. His entire evidence was

relevant, and the objection for irrelevancy was unsound. As to the objection that the deposition was hearsay and incompetent; more or less of it was founded on personal knowledge, for aught that can be seen to the contrary,—it was not open to this objection as a whole,—and if any part of it was so obnoxious, it was the duty of the objector to point it out specifically to the court, and for want of the specification it was defective; but no part would have been so specified, unless the statement of the witness that the firm sold and shipped the goods from San Francisco to the defendant at Rawlins in this territory, "*through its agent;*" whether this statement was hearsay or not, would depend upon how the witness got his information; if he obtained it from the agent it was hearsay, if from the defendant, it was personal; the deposition does not indicate the source, and as long as the deponent might have had personal knowledge on the subject, we cannot say that he had not. Hence the entire objection failed, and the deposition was properly admitted. The plaintiffs below introduced evidence in their opening, that in August, 1875, they sold the defendant below 7,975 cigars of various brands, and on the 23d of the month shipped them in three cases from San Francisco to her at Rawlins, addressed "Jane Granger, Rawlins, Wyoming." This last-mentioned evidence was by three witnesses, who testified by depositions taken in 1877 and 1878, and speak of her as "Mrs. Jane Granger;" but there is nothing in their evidence to indicate that that was anything else than their description of her at the time of testifying; and if their evidence can be understood as so describing her at the time of the alleged sale, it has no tendency to show that she was then, or afterwards, married. Next after the reading of the depositions, the plaintiffs introduced as a witness, Joseph B. Adams, who on his direct examination in chief was asked, if he knew the defendant, Jane Granger, in July and August of 1875; having answered that he did, he was asked what, if any, business she was doing then; to which question her counsel objected, on the ground that the hus-

band must be co-defendant with the wife, unless it appears that the action relates to her sole and separate property, for which purpose it must be so alleged in the petition, and the allegation be supported by proof; and further objected to the introduction of any proof by the plaintiff that she was carrying on business on her own account, or that it was her sole and separate business or property; and, so further objected on the ground that such evidence would be irrelevant, improper and not confined to the issue.    The objection was overruled, and an exception taken.

The objection was alternative, assuming for its basis, first, that it already appeared that the defendant was under coverture at the time of sale and commencement of the action; and, secondly, that the question tended to show that in July and August, 1875, she was carrying on business on her own account, or that the action related to her sole and separate property; coverture had not appeared, nor was there in the case any testimony tending to establish it; there was therefore, no ground for the objection, and it is unnecessary for us to decide whether the exception that it specifies is recognized by the statute, or if recognized, whether it is conditioned by the rule of pleading that the objection specifies.    The objection was properly overruled.

The witness then answered, that she was doing a general merchandising business in groceries and dry goods, (adding) and at Rawlins.    Continuing, and on the same examination, he stated that during those months he was agent there for the Union Pacific Railroad Company; and was then asked, if during that August, as such agent, he received these goods, " marked to Mrs. Jane Granger;" the question was objected to as incompetent, irrelevant and immaterial; the objection was overruled, and an exception taken.    The objection was apparently a renewal of the last one, and was properly overruled.    He answered that he did; that he received goods for her every month.    Proceeding, and upon the same examination, the witness testified that he, as such agent, received there in or near August, 1875, two cases of

cigars from Lewis Brothers, marked to Jane Granger, at Rawlins, and that they were delivered to William Granger; that the cigars were in boxes made of very thin boards,—as he supposed, regular cigar boxes; the witness was then asked for whom they were delivered to William Granger; she objected to the question for irrelevancy, immateriality and incompetency; the objection was overruled and an exception taken. The question had but one of two tendencies: either to show a delivery to William Granger for another party than Jane Granger, and, therefore, they were not for her, and in that view it was unfavorable to the prosecution, and favorable to the defendant; or to show that they were delivered to her by being delivered to him, which was simply showing what the plaintiffs might show at that stage of the case. The objection was properly overruled. The witness answered that the two boxes were delivered to William Granger, for Jane Granger. This evidence, coupled with other evidence tending to show that they passed from William to Jane, or that he was her agent to receive them, or, if not, that she ratified his receiving them, and the evidence credited by the jury, the plaintiff would have established a delivery to the defendant, either by a delivery to her in person, or by a delivery to her agent; thus illustrating the propriety of the question. On cross-examination the witness stated that he did not know the contents of the boxes. And during this examination he was questioned by the court, and answered as follows, and without objection:

*Question.* Was Mr. Granger acting as the agent for anyone; or was it for himself he was receiving those boxes?

*Answer.* He was receiving them as I supposed, the same as he was receiving all of Jane Granger's goods; he received them and transacted business in her name.

*Question.* He was acting as agent, then, in this transaction?

*Answer.* That was my understanding of the matter.

So much of the first of those two questions as asked whether William Granger received the boxes for himself,

and so much of his answer as stated that he was receiving all (meaning all the other goods) and transacting business in her name, was proper; the residue of the question, because calling for, and the residue of the answer, because expressing the opinion of the witness, were improper; for this reason the second question and its answer were improper. Though the defendant made no objection to these improper parts at the time, we are not prepared to say that she might not at any time afterwards during the trial have had them stricken out; nor that they did not in law stand as stricken out from the first; and for the purposes of the objection, which we must come to, we treat them, as if they had been stricken out. So stricken out, the remaining and unexceptionable evidence of the witness was, that before the arrival of the two boxes at Rawlins he, as the agent of the railroad company, had received these goods for Jane Granger monthly, and that William Granger had received them all from the company, and had transacted business in her name; this evidence tended to show that the latter had received the prior arrivals as her agent, and was her general agent in her trades; and that was the capacity with which the testimony had clothed him down to the putting of the question, which we next consider.

At the close of his re-examination the witness left the stand, and then by leave of the court was recalled by the plaintiffs, and was asked by the court: "What did Mr. Granger say, if anything, as to the contents of those boxes?" (meaning the boxes in question); the defendant objected, unless it was shown that William Granger was agent of Jane Granger. The objection conceding the propriety of the question, provided the agency appeared, the objection was overruled and an exception taken. As the agency had been shown, the objection defeated itself by its own limitation, and was properly overruled.

The witness' cross-examination tended to show that when the two boxes arrived in August the Grangers refused to receive them; that in October following, the agent of

Lewis Bros. was there and agreed with William Granger that, to save the firm expense of storage with the railroad company, and so for the accommodation of the firm, he, Granger, should pay the freight upon them, and take them into his possession, but with the further condition that, should he want them, he was to retain and pay for them,— not wanting them, that they should be subject to the disposal of the firm; that he thereupon paid the freight, and took the two cases into his possession accordingly. Having been so recalled by the plaintiff he stated, without objection from the defendant, that on a subsequent occasion at Rawlins this agent of the firm demanded of William Granger payment for the two cases; that the latter objected on the ground that one of them had not been received by him; to which the agent replied that it might be in his cellar, and proposed that a search be made there for it, but Granger objected; that a conversation then followed between them; at this point the plaintiff called for the conversation—the question was objected to for irrelevancy and immateriality; the objection was overruled and an exception taken. When the objection was ruled upon, all that appeared of the conversation was, that it was based upon the demand, and led to the search. Upon the assumption that the jury would find that William Granger was a principal in the October arrangement, and the defendant not the vendee of the two boxes, the conversation would be irrelevant, and therefore immaterial. But they might find that he was her agent in that arrangement, and as such took the possession of the boxes, and that she therefore was the vendee; in this alternative he would, in the absence of further explanation, stand as having posesssion at the time of the demand, and in that capacity; the demand was in effect to pay, or return; it was a demand upon him as her agent, to account for the property; it was then as relevant to prove the conversation as it was to prove the demand which led to it; as it was to prove the search which resulted from it; and the pertinency in proof of the demand and search was neither questioned,

nor could it be intelligently questioned. The objection was properly overruled.

The plaintiffs rested, and the defendant introduced evidence tending to show that she was a married woman at the time of the commencement of the suit. She requested the court to instruct the jury that if they should find that she was a married woman then a verdict should be returned for her; the court refused so to instruct, but did instruct that the question whether she was then married, was not a question for them; and she excepted to the refusal to instruct, as so requested, and to the instruction as so given.

The plaintiffs' claim was founded on the theory, and their proof tended to show that when the alleged sale was made, the defendant was conducting at Rawlins a trade on her sole and separate account, and that the merchandise in question was sold and delivered to her for that trade; but it did not appear, nor was there evidence tending to show that she was married at the time of the sale; the consequence was that at the common law, she being under coverture when the suit was brought, the husband was a necessary co-defendant. Had it appeared in the case, or had the evidence tended to show that she was under coverture at the time of sale and institution of suit, it would have become necessary to determine the effect upon the case of the act of December 4th, 1869, which at its section 5 on page 481 of the Compilation permits a married woman to conduct trade on her sole and separate account; and to sue and be sued as if she were a *feme sole;* it would have been necessary to determine that effect, provided the act was in force in that particular as to suit, when the trial was had; but in the present state of the case that act cannot apply, and its effect cannot be considered. As the evidence tended to support the second defense; it was error in the district court to withdraw that evidence from the jury.

The defendant also excepted to the instruction and to each and every part thereof. This was an exception to the charge as a whole, not calling attention to any particular

part; therefore reached no defect, if there was any besides that which we have considered; but there was no other. The rest of the charge was upon the first issue and consisted in submitting it to the jury. This leads to the objection that the verdict was not sustained by sufficient evidence; it was based upon the first issue, the evidence under this issue was conflicting, and we cannot say that the jury arrived at an erroneous conclusion from it.

This disposes of all the objections that were taken below by the plaintiff in error.

The judgment rendered below is reversed—the case remanded and a new trial ordered.

BLAIR, J. I concur with my brother Justice Peck in reversing the judgment rendered in this case in the court below, upon the ground, that the court took from the jury the issue as to whether Jane Granger was a married woman.

As to the other points complained of I express no opinion.

Judgment reversed.

SENER, C. J., dissenting.

This was an action brought in Carbon county and afterwards removed to Albany county. It was brought by Lewis Bros. of San Francisco to recover from Jane Granger a balance of $156.87 and interest, for certain cigars sold and delivered to her at her request, as alleged in the petition bringing the suit. The answer was a general denial, and also set up that the defendant was a married woman, having a living husband named William Granger, and claimed that he ought to be joined as a party defendant, and concluded that she ought to be dismissed with costs.

The court proceeded to try the case with the aid of a jury, a verdict was rendered for the plaintiffs, Lewis Bros., and upon this a judgment was entered; after a motion for

a new trial had been made, argued, and overruled, the defendant below has brought into this court a writ of error to have the judgment of the court below reversed.

There are twelve assignments of error made by counsel in their written assignments filed in this case, but there were only six assignments of error embraced in the motion for a new trial, and the counsel in their printed brief reduced their points or assignment of errors to six.

I think under rule No. 5 of this court, that counsel or litigants can only be heard here in support of such assignments of error as were specifically made, pointed out and embraced in the motion for a new trial in the court below; what was relied on there, must be relied on here. No more can be asked of the court here, than was asked of the court below; what was not specifically pointed out in the motion for a new trial, though excepted to during the running of the trial, must be taken to be waived in the court below and so cannot be availed of here. Rule 5 of this court is explicit: " No case will be heard in court unless a motion for a new trial shall have been made in the court below, *in which all matters of error and exceptions* have been presented, argued, and the motion overruled and exceptions taken to the overruling of said motion, all to be embraced in the bill of exceptions." As was said by the court in *Dodge* v. *The People*, " all the reasons known for setting aside the verdict and granting a new trial should be set forth in the motion for a new trial," 4 Neb., 231; and again the court in 8 Neb. 134, *Lyman* v. *McMillan*, says, " To lay the foundation for a review by the supreme court, of questions raised and decided on the trial in the court below, it is necessary that the particular errors relied on be first assigned in the motion for a new trial."

The first exception or assignment of errors which I shall notice, is the fifth, which is in these words: " Because the court erred in instructing the jury to pay no attention to the evidence to sustain the second defense of the defendant's answer." Now the second part of the defendant's answer set up the fact that the defendant was a married woman

with a living husband at the time suit was brought, and that the husband, William Granger, should have been joined with her as a party defendant.

Was there error in this? Practically the second part of the defendant's answer, or defense, was in the nature of a demurrer alleging a defect of parties defendant.

The court did not proceed at once to determine that question as it might have done, to have seen its bearing upon the case, but treated that part of the defense as an answer. Now was it any defense that should have gone to the jury? or could its going to the jury have affected the case in the least? Clearly the court was right in saying that the husband ought not to have been joined with the wife as a defendant. For I think it very clearly established by the testimony of Adams that the wife was conducting, or to use his language, " doing a general merchandise business, groceries and dry goods," and on this point lies testimony not impeached. She was carrying on a business, I think, as contemplated by sec. 5 of the Married Woman's Act, p. 481, chap. 82 of the Compiled Laws of Wyoming, and that section that in respect to such business she may sue and be sued alone. If this be true, what object could there be in joining her husband with her? Clearly none.

But it was claimed in argument at bar that sec. 25 of the Wyoming Code of 1876 provided that, " when a married woman is a party her husband shall be joined with her except:

" I. When the action concerns her separate property she may sue alone."

" II. When the action is between herself and husband she may sue or be sued alone." And as this act was passed in 1873, and the Married Woman's Act in 1869, it was maintained that the act first cited repealed by implication the authority to sue a married woman as a *feme sole.*

I think not. At the session of the fourth legislative assembly in 1875, an effort was made to codify the laws, and by sec. 2, of the act of Dec. 11, 1875, entitled " An

act to compile and publish the laws of Wyoming in one volume," it was provided that it should be the duty of a joint committee to cause each law of the Territory that may be in force at the close of the present session to be published as it may exist at that time," and further, that all were to be published as the "Compiled Laws of Wyoming." Under and by virtue of this authority, both sec. 25 of the Code, and the Married Woman's Act appear in the compilation. Now can they be so construed that both shall stand? I think so, by treating the authority to sue a married woman as a *feme sole*, as but a further exception to sec. 25 of the Code. If it be said, as against this view, that the exceptions practically explain away the general rule of the 25th sec., the answer must be, I think, that the legislature so meant and has so said, and it is but giving expression to what they have said. The execution should follow the judgment. And it is expressly provided in the Married Woman's Act, that the property of a married woman may be taken on execution against her. This view preserves the Married Woman's Act in its entirety, and carries out the theory that underlies its construction, viz.: that a married woman may not only contract independently of her husband, but may be made liable for her contracts without the joinder of her husband with her in the suit, and that separate judgment and execution may follow in such suit and as a result of it. True, the compilation has never been formally adopted by the legislature, by an act in terms legalizing the whole of it, yet the purpose was to publish every act as it then existed. Since then two legislative assemblies have met, and the compilation has been recognized in at least six acts of the two bodies; laws being passed to amend the compilation and the amended laws, and those amended laws have recognized the compilation in unmistakable terms, and seven laws have been amended and changed. May it not be fairly inferred that this compilation made in pursuance of an act of the legislature, was satisfactory to it in so far as the same has not been altered

or changed,—both statutes are maintained as evidently was the purpose of the legislature. The very object of the compilation, was a harmonious code of laws, readily to be found in a single volume, and each and all speaking with the same force and equal authority and to be construed, if possible, as acting together, which is done by this view.

The case just cited in the 6th of California, contained a statute which was in the very same words of our 25th section of the Code, and was silent as to any authority to sue a married woman as a *feme sole;* but the supreme court of that state held that a married woman was not only suable alone in respect to her business, as sole trader or as a *feme sole,* but that it was error on demurrer to join her husband with her. Nor is it necessary to sue the married woman in any manner different from that which would be followed in suing her as a *feme sole.* The object is to remove the coverture and to treat her in the suit as if it never existed. The court in 57 N. Y., p. 136, decided in 1872, *Hier* v. *Stabler,* say, "in an action upon a contract executed by a married woman, it is not necessary to allege in the complaint that the contract was executed in her business or for the benefit of her separate estate. Nor is it necessary to ask judgment charging her separate estate; but the complaint may be framed as if the defendant were a *feme sole,* and if coverture is interposed as a defense, testimony proving the contract enforceable against a *feme covert* is proper in reply."

Having ascertained that there was no error in the failure to join the husband as a party defendant, was it error in the court to say to the jury, that they had nothing to do with the question of whether the defendant was a married woman or not? Possibly it would have been better for the court to have said, that the fact of the proof of the defendant being a married woman could not relieve her from liability for her debts contracted in and about her separate business, and although she may be a married woman, yet if she was conducting a separate business, and

contracted and has not paid this debt, she is liable in this action, and you must so find. Yet I cannot say the court erred. The defendant was carrying on a separate business on her own account, as I think was clearly proved, and the plaintiff properly introduced testimony to show the contract enforceable against her as a married woman, to wit: that she had been doing business on her sole and separate account. If she had bought these cigars as a *feme sole* she was liable. If she bought them in her sole and separate business as a married woman, she was liable; her husband could not be joined in an action relating to her separate business, and how she was prejudiced by the court in its instructions I cannot see; and unless she was, I think the court committed no such error as she can complain of here, and therefore I think the fifth assignment of errors not good.

The second assignment of errors is the admission of the deposition of Samuel Lewis, the California merchant, who shipped the goods; the deposition was certainly good as a link in the chain, showing that Lewis Bros. shipped the goods conformably to the request of Mr. Leebes, who swears that he sold the bill of goods to Jane Granger, and that he had dealings with her before; therefore this latter evidence tending to prove Jane Granger carrying on business in her own name, and so admissible.

As to the fact of the goods being shipped conformably to Leebes' direction, this was fully proved by Barton, the shipping clerk of Lewis Bros.

The third assignment of errors is because the court erred in admitting the evidence to which the defendant objected. This, in my opinion, is too indefinite: *vide, Lyman* v. *McMillan*, 8 Neb., and *B. & M. R. R. Co.* v. *Harris*, 8 Neb., 14. It does not apprise this court of the particular testimony in which the alleged errors occurred; it should do so specifically, that this court may know what exceptions taken during the trial were really relied on in the motion for a new trial. If it is said, as it was, that an inspection

of the whole record will show, it will be a sufficient answer to say that even if we relied on the written assignment, shown here for the first time, the twelve assignments of errors relied on by the plaintiff in error, that they do not embrace or point out as error all the exceptions taken by the counsel for the defendant in the court below; but if they did there would be nothing in the record to show that they were all relied on in the motion for the new trial, for clearly the record brought here does not show it. It is hardly probable in any case that every ruling of an inferior court in the trial of any case is erroneous, to which counsel often hurriedly excepts; they are saved often to give time to consider them more maturely, and often are then seen to be right, and so abandoned in the motion for a new trial. Be this as it may, the exceptions relied on are not specifically pointed out, and therefore I cannot hunt through the record to find the exceptions taken, and if I did, as I have said before, I could not know what was really relied on as errors in the motion for a new trial.

The fourth and sixth assignment of errors are as follows: The fourth, because the court erred in taking from the jury a material issue in the case; the sixth, because the court refused to give the jury instructions asked for by the defendant.

These two assignments are really but one. The issue claimed to be taken away was this instruction; one of the issues presented in the answer, is that the defendant at the time of the commencement of this suit was a married woman, having a husband then living, which fact was well known to the plaintiffs, and that they failed to join him in this suit. There was no error in the failure to join the defendant's husband. I have so argued, and practically the court below so decided. It was for the court, a question of law on the facts upon which there was no issue of fact to go to the jury; for her marriage was never controverted or her having a husband living at the time the suit was brought. The real issue was, did the defendant purchase

the plaintiff's goods? and if so, even if she was a married woman, was she carrying on a sole and separate business for herself? These facts were substantially found by the jury in their verdict. They were the real issues presented and decided, and the court, as I think, took from the jury no material issue, if indeed any issue at all. It simply refused, as it had a right to do, an instruction which might have misled the jury.

The first error assigned we come now to consider, and it is the last to be decided ; it is this : " Because the verdict was not sustained by sufficient evidence, and is contrary to law." If the evidence was sufficient, I have no doubt the law was. There was a conflict of evidence, but the jury that tried the case resolved the conflicts and disagreements in favor of the plaintiffs, as was their peculiar province. The court, trying the case below, refused to disturb the verdict then and there found; certainly, not because there is a conflict of testimony, for this has repeatedly been decided otherwise. If because, as is alleged, of insufficiency of testimony, I have only to say, that the jury thought and held the evidence sufficient, the court, hearing all the case, concurred, and I will not disturb the conclusions they reached.

For these reasons, I am of opinion to affirm the judgment of the court below.